[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] JUDGMENT ENTRY.
This appeal, considered on the accelerated calendar under App.R. 11.1(E) and Loc.R. 12, is not controlling authority except as provided in S.Ct.R.Rep.Op. 2(G)(1).
On a sunny fall day in 1995, appellant Amelia Sander left her downtown Cincinnati office to walk to a meeting with a broker whose office was located in the PNC Center. Sander approached the PNC Center from the west, intending to cross Main Street from Fifth Street. Prior to crossing Main Street, Sander stopped at the pedestrian crosswalk and, while waiting for the light to change, observed the plaza that she would traverse to enter the PNC Center. Precisely what Sander observed while waiting for the light to change is a matter of some contention between the parties. Regardless of which party's interpretation is correct, Sander saw something that made her alter her direct path into the building. After crossing the street, she veered north before entering the plaza that would lead her to the PNC Center doors and, upon attempting to enter the plaza, tripped over a step.
The step was part of a single, continuous architectural delineation of the entire western entrance to the plaza. At the construct's southernmost and highest point, it acted more as a barrier and was the height of the two steps located there to give access to the plaza. To accommodate the gradual descent of the street in front of the plaza, the height of the barrier gradually diminished as it ran to its lowest, northernmost point, where it became even with the plaza's surface. Sander tripped and fell towards the northern end of the plaza, where access to the plaza was the height of a single step of approximately two and one-quarter inches. She sued defendants-appellees Aetna Real Estate Investors and Hines Interests Limited Partnership, the managing partner in the ownership of the PNC Center and the property manager, respectively, for her injuries. Sander alleged that Aetna and Hines had been negligent in permitting an unreasonably dangerous condition to persist at the PNC Center.
Discovery in this case consisted primarily of the deposition testimony of Sander, Gary Beck, employed by Hines as the manager of the PNC Center, and Joe Hartmann, Beck's assistant property manager. Also, Thomas Huston, Ph.D., P.E., submitted an affidavit on Sander's behalf that expressed an opinion regarding the safety of that part of the gradually sloping area where Sander fell. The only contentious area of discovery was Sander's deposition. She appeared initially to admit noticing the entire delineation marking the western entrance to the plaza before attempting to circumvent it to the north. Later, under questioning from her own attorney, and through amendments to her earlier testimony, Sander sought to clarify that she had seen only the southernmost entrance to the plaza where the two steps accommodated access to the plaza.
Aetna and Hines moved for summary judgment and to strike Sander's seemingly inconsistent deposition testimony. The trial court overruled the motion to strike portions of Sander's testimony, but granted the motion for summary judgment. Sander now appeals the entry of summary judgment, claiming that material issues of fact exist about (1) whether the area of the plaza where Sander sought access and tripped was unreasonably dangerous, and (2) whether Aetna and Hines were on notice of a defective condition on their property. Finding no issue of material fact in the record under either interpretation of Sander's deposition testimony, we affirm the judgment of the trial court.
To obtain a summary judgment pursuant to Civ.R. 56(C), Aetna and Hines had the burden to demonstrate that (1) there was no genuine issue of material fact, (2) they were entitled to judgment as a matter of law, and (3) after construing the evidence most favorably for Sander, reasonable minds could only reach a conclusion adverse to her.[1] Only contention over facts that might have affected the outcome of the suit were relevant in the trial court's determination whether there was a genuine issue of material fact that would preclude summary judgment.[2] We review the decision to grant summary judgment de novo, using the same standard that the trial court was required to use under Civ.R. 56(C).[3]
In their appellate briefs, both parties classify Sander as a business invitee. A business invitee is a person who enters the property owned or occupied by another, with express or implied permission, for the owner's benefit.[4] The duty Aetna and Hines owed Sander as a business invitee was the use of ordinary care in maintaining their property in a reasonably safe condition so that Sander would not be unnecessarily and unreasonably exposed to danger.[5] But Aetna and Hines were not required to protect her from "dangers which are known to such an invitee or are so obvious and apparent that [s]he may reasonably be expected to discover them and protect [her]self against them."[6] In that case, her negligence would, as a matter of law, have been greater than theirs.[7]
In this case, Sander admitted to seeing something that she believed would hinder her entrance to the plaza. Whether she saw only the southernmost portion of the demarcation or its entirety is immaterial, since it was all one continuous threshold to her entry. The steps simply tapered off to the location where she fell. This is not the type of case requiring us to charge Sander with constructive knowledge of the threshold because it was open and obvious. Under either interpretation of her deposition testimony, Sander saw something that warned her to detour from a direct path to her goal. Having established that a change in elevation was required for her to enter the plaza from her chosen direction, Sander was responsible for negotiating the known contiguous threshold successfully. Her negligence was thus greater than that, if any, of Aetna and Hines.
From this perspective, Sander's case is similar to other instances in which plaintiffs have seen obstacles in their paths and failed to negotiate them properly,[8] or, to cases where having observed an obstacle, plaintiffs have either been distracted as they attempt to circumvent the obstacle or forgotten about the obstacle during a short interval.[9] Where a plaintiff's knowledge of an obstacle is actual, rather than constructively charged due to a failure to notice an obvious condition, summary judgment for the defendant is proper, subject to one narrow exception. This court has reviewed similar cases to determine whether, despite a plain feature of property, and despite a plaintiff's actual knowledge of the feature, the defendant should have reasonably foreseen the potential for harm to invitees.[10] A duty to warn arises where there are actual dangers on the premises, and the owner's knowledge is superior to that of the business invitee.[11] In that event, the owner's negligence may exceed that of the invitee.
There is nothing in the record before us to suggest that Aetna and Hines should have foreseen that the delineation marking the western boundary of the PNC Center plaza was unsafe. Gary Beck, the Center's manager for eight years, stated in his deposition that Sander's fall was the first incident of its type at that location during his tenure. There is no allegation that the step was in disrepair or was functioning in any way other than it was originally designed. Instead, Sander relies on an affidavit submitted by Thomas R. Huston, Ph.D., P.E. The affidavit states that, based on his knowledge of the standards of the building industry in 1977-1978, when the PNC Center was constructed, and in 1995, when the accident occurred, the step was an unnecessarily dangerous hazard. But the affidavit cites published standards that postdate the construction of the PNC Center and plaza as the basis for Huston's opinion.
As long as a building does not constitute a serious hazard, compliance with the Ohio Basic Building Code is determined based on the regulations in effect when the building was constructed.[12] There is no allegation that the plaza did not comply with the applicable standards at the time of construction. Huston's opinion, however, for which no basis is provided, is that the step as designed and constructed in 1977 violated then-current industry standards. From the record, we note that during 1977, according to Huston's curriculum vitae, he was employed with the United States Post Office as a "Casual Clerk." Huston did not even obtain his undergraduate degree in engineering until 1980. As a result, it is difficult to hold, without more, that Huston's opinion as to building engineering standards in 1977 raises a genuine issue of material fact.
Because Sander failed to negotiate a known obstacle, her negligence was, as a matter of law, greater than that of Aetna and Hines. In addition, there is no evidence in the record to suggest that Aetna and Hines should have foreseen that the architectural feature in the plaza was hazardous. Therefore, the judgment of the trial court is affirmed, and a certified copy of this Judgment Entry shall constitute the mandate to be sent to the trial court under App.R. 27. Costs shall be taxed under App.R. 24.
Gorman, P.J., Painter and Sundermann, JJ.
[1] See Zivich v. Mentor Soccer Club, Inc. (1998), 82 Ohio St.3d 367,369-370, 696 N.E.2d 201, 204, citing Horton v. Harwick Chemical Corp.
(1995), 73 Ohio St.3d 679, 653 N.E.2d 1196, paragraph three of the syllabus.
[2] See Anderson v. Liberty Lobby, Inc. (1986), 477 U.S. 242, 247-248,106 S.Ct. 2505, 2510; see, also, Gvozdanovic v. Woodford Corp. (May 19, 2000), Hamilton App. Nos. C-990574, C-990586, unreported.
[3] See Smiddy v. The Wedding Party, Inc. (1987), 30 Ohio St.3d 35,506 N.E.2d 212; see, also, Donald v. Midwest Mortgage Banc, Inc. (June 30, 2000), Hamilton App. No. C-990602, unreported.
[4] See Scheibel v. Lipton (1951), 156 Ohio St. 308, 329, 102 N.E.2d 453,463.
[5] See Paschal v. Rite Aid Pharmacy, Inc. (1985), 18 Ohio St.3d 203,480 N.E.2d 474, 475.
[6] See Sidle v. Humphrey (1968), 13 Ohio St.2d 45, 233 N.E.2d 589, paragraph one of the syllabus.
[7] See Wilson v. PNC Bank, N.A. (May 5, 2000), Hamilton App. No. C-990727, unreported.
[8] See Williams v. 312 Walnut Ltd. Partnership (Dec. 31, 1996), Hamilton App. No. C-960368, unreported; Coco v. Chi-Chi's, Inc. (Sep. 23, 1999), Franklin App. No. 98AP-1306, unreported.
[9] See Raflo v. Losantiville Country Club (1973) 34 Ohio St.2d 1,295 N.E.2d 202; Wilson v. PNC Bank, N.A. (May 5, 2000), Hamilton App. No. C-990727, unreported; Wilson v. Kids Room (Sept. 22, 1997), Highland App. No. 96CA909, unreported; Oren's v. Ricardo's Restaurant (Nov. 14, 1996), Cuyahoga App. No. 70403, unreported; Ault v. Provenza (May 15, 1996), Lorain App. No. 95CA006210, unreported. But, see, Leis v. DaytonMedical Imaging II (July 30, 1999), Montgomery App. No. 17684, unreported.
[10] See Kerr-Morris v. Equitable Real Estate Invest. Mgt., Inc.
(1999), 136 Ohio App.3d 331, 736 N.E.2d 552, fn. 6; Wilson v. PNC Bank,N.A. (May 5, 2000), Hamilton App. No. C-990727, unreported; Williams v.312 Walnut Ltd. Partnership (Dec. 31, 1996), Hamilton App. No. C-960368, unreported.
[11] See Jackson v. Kings Island (1979), 58 Ohio St.2d 357, 359,390 N.E.2d 810.
[12] Ohio Adm. Code 4101:2-1-09. See, also, Kornowski v. ChesterProperties, Inc. (June 30, 2000), Geauga App. No. 99-G-2221, unreported.